## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNISOTA

WILLIAM BALLOU and JOAN
WILLIAMSON,

     Plaintiffs,

v.                            Civil Action No.

ASSET MARKETING SERVICES, LLC
d/b/a GOVMINT.COM

     Defendant.

## CLASS ACTION COMPLAINT

This class action is respectfully brought by Plaintiffs William Ballou and Joan Williamson, on behalf of themselves and all others similar situated who purchased coins from Defendant Asset Marketing Services, LLC ("AMS" or "Defendant").

1.     Defendant has an track record of engaging in fraudulent and unconscionable business practices.  In fact, in 2016, AMS was cited by the Minnesota Department of Commerce and forced to pay civil penalties or revise its quality assurance program to include all sales practices and requirements required by Minnesota law.

2.     AMS was also told that it could not rely on any of its written terms or conditions of a bullion coin/produce sale to a consumer unless (1) the term or condition upon which AMS seeks to rely was disclosed to the consumer in accordance with Minn. Stat. § 80G.07 (2015) or (2) AMS had a signed written agreement for the purchase of bullion products disclosing such terms. Despite these clear reprimands and directives, AMS

continues to engage in deceptive practices taking advantage of unwary, and often elderly, investors, including Plaintiffs and Class members, who have lost millions of dollars in the process.

3.    AMS's conduct constitutes a violation of Minn. Stat. §§ 325F.67 and 325F.69, subd. 1, and these violations give rise to a private cause of action for damages and equitable relief under Minn. Stat. § 8.31, subd. 3a, which provides that "[i]n addition to the remedies otherwise provided by law, any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." Minn. Stat. §§ 325F.67 and 325F.69 are among the laws referenced explicitly in Minn. Stat. § 8.31, Subd. 1, which generally covers all state laws "respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade . . . ."

4.    Because Plaintiffs and other Class members are over the age of 62, an additional cause of action exists under Minn. Stat. § 325F.71, which applies to deceptive acts perpetrated against senior citizens (62 years old or older) and vulnerable adults. Under Minn. Stat. § 325F.71, subd. 4, as under Minn. Stat. § 8.31, subd. 3a, a person "injured by a violation of this section may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." Minn. Stat. § 325F.71, subd. 2 imposes an additional civil penalty of $10,000 per violation.

5.     The putative class is a nationwide Class with an Elder Subclass seeking damages, treble damages, restitution, disgorgement, civil penalties, attorneys' fees, and costs of suit. As set forth below, the Class, including the Elder Subclass, should be certified and the relief requested ordered as soon as possible.

## I. PARTIES

6.     Plaintiff William Ballou is an individual Florida citizen residing in Tampa, Florida.

7.     Plaintiff Joan Williamson is an individual California citizen residing in Loomis, California.

8.     Defendant Asset Marketing Services, LLC is a Delaware limited liability company with its principal place of business at 14101 Southcross Drive West, Burnsville, Minnesota 55337, which is in Dakota County.

## II.  JURISDICTION & VENUE

9.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

10.     This Court also has original subject matter jurisdiction over federal claims under 28 U.S.C. § 1332 and supplemental jurisdiction over all state-law claims under 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over Defendant because Defendant is incorporated in Minnesota, headquartered in Burnsville, Minnesota, and is at home in the state. Furthermore, Defendant has transacted business in this state, has purposefully availed

itself of the state's laws and jurisdiction by soliciting customers in the state and delivering merchandise within the state, and has committed tortious acts within the state.

12.    Venue is proper in this district under 28 U.S.C. § 1391 because Defendant transacted its affairs with Plaintiffs in this District, and a substantial part of the events giving rise to this action and the property that is the subject of the action is situated in this District.

### III.  FACTUAL ALLEGATIONS

13.    Defendant is a wholly-owned subsidiary of AMS Holdings, LLC. In December 2009, AMS Holdings, LLC formed New York Mint, LLC, which acquired the assets of New York Mint, Ltd., a Minnesota-based collectible coin company. In December 2013, New York Mint, LLC changed its name to Asset Marketing Services, LLC.

14.    AMS is a leading distributor of coins for the US market through its brand, GovMint.com — "*the best source for coins worldwide*®."

15.    Ballou is an elderly man who lives in Florida. Williamson is an elderly woman who lives in California. Plaintiffs subsist on a fixed income.  Plaintiffs are not in the position to work or otherwise earn money if their savings run out or are absconded with by fraudsters.

16.    Between 2015 and 2019, Plaintiffs were solicited by Defendant more than fifty (50) times over the telephone and through email correspondence.

17.    Originally, Charles Davis, Senior Executive Account Manager for Defendant, reached out to Ballou and asked if he wanted to invest in certain commemorative coins.  When Ballou expressed his interest, Davis provided Ballou with

material information about several coins. Before that, Ballou, a consumer, knew nothing about commemorative coins.

18. Davis also sent Ballou a sample of gold. Considering this and the other representations, Ballou assumed he was investing in gold and precious metals.

19. Considering these representations regarding Defendants' commemorative coins, Ballou decided to purchase them.

20. Indeed, during these phone calls, Defendant induced Ballou to purchase 127 coins at a price of over $630,000.00.

21. Ballou gave Davis his credit card number over the phone. Ballou was not asked, told, or offered to review anything on Defendant's website or other written materials, nor was he asked to sign anything.

22. In one purchase, Ballou paid over $38,995.00 for a single coin.

23. However, subsequent appraisals show that the coins are worth less than 1/3 of what Ballou paid.

24. Defendant never told Ballou that the *market* value of the coins was worth substantially less than what he was buying.

25. Defendant never told Ballou that the market for the coins would have to double and double again for him to merely recoup the value of his purported investment.

26. Defendant never told Ballou that the seller knew that, based upon his purchase price, he was only purchasing the coins for novelty value, as a "keepsake" or otherwise that at the price the coins were not "investment" assets that were likely to appreciate enough to warrant the price.

27.     It was never explained to Ballou that his purchases would not result in any profit if he decided to sell the coins he thought he was purchasing to ensure financial security.

28.     Similarly, Aaron Rodriguez, Williamson's "personal" Account Manager for Defendant, reached out to Williamson and asked if she wanted to invest in certain commemorative coins.  When Williamson expressed her interest, Rodriguez provided Williamson with material information about several coins.  Before that, Williamson, a consumer, knew nothing about commemorative coins.

29.     Considering these representations regarding Defendant's commemorative coins, Williamson decided to purchase them.

30.     Defendant induced Williamson to purchase 10 coins at a price of over $13,000.

31.     Williamson gave Rodriguez her checking and savings account number for her bank over the phone. Williamson was not asked, told, or offered to review anything on Defendant's website or other written materials, nor was he asked to sign anything.

32.     If funds in Williamson's checking account were insufficient to cover the cost of certain coins, Rodriguez would withdraw the funds from her savings account.

33.     At one point, Rodriguez told Williamson that she could potentially realize a 400% return on the purchase of these coins.

**Defendant's Deceptive Sales Practices are Part of a Scheme Uncovered by the Minnesota Department of Commerce**

34.    The foregoing are not the only examples of Defendant's deceptive sales tactics. Public sources of information are rife with victims of this scam.

35.    Ballou has been substantially injured because he converted available cash into these coins which are not worth anywhere near the value of the price demanded and extracted by Defendant for them.

36.    Commemorative coins are typically minted with a quarter or half ounce of a precious metal to commemorate a special event or notable person.

37.    Defendant makes commemorative coins available to anyone who wants to buy them.

38.    Typically, the value of commemorative coins does not fluctuate with the value of the underlying precious metal.

39.    Commemorative coins have dubious numismatic value in the long run as investment vehicles when priced so high, and the ability to fully recoup one's investment has never been proven.

40.    Indeed, Defendant was doing business as Aber & Levine; AMS, LLC; First Federal; First Federal Coin Corp; First Federal Mint; Gold Shield International; GovMint; GovMint.com; New York Mint; and Preferred Customer Club (PCC) when its scheme was attacked by the Minnesota Department of Commerce.  A copy of the November 2016 Consent Order has been attached as Exhibit A.

41.    The core allegations against it were as follows:

- Asset Marketing Services Representative Davenport initiated a relationship and repeatedly solicited an elderly lady taking advantage of her state. Davenport repeatedly misrepresentations of a bullion coin in violation of Minn. Stat. § 80G et seq.

- Asset Marketing Services failed to "require all of its quality assurance evaluations with violations, deviations, and/or concerns/questions/notes be forwarded to the manager and employee." Additionally, they failed to make a "record acknowledging the employee's receipt of the evaluation, and documentation of any discipline or retraining associated with the evaluation."

- Asset Marketing Services holds consumers to its terms of conditions limiting consumers to one-year statute of limitations and an arbitration clause. However, they failed to disclose these conditions to consumers misrepresenting the terms of a sale of bullion coins to the consumer.

42.    As the Minnesota Department of Commerce discovered, Defendant "approximately two years ago" had only forwarded to the Vice President of Operations or Director of Compliance for review a "selection of quality assurance evaluations" and that there was "no record that any quality assurance evaluations from August 1, 2013 to October 1, 2015 were provided to, or resulted in retraining of or disciplinary action against Representative Davenport." (Ex. A at 5.)

8

43.     Moreover, the Minnesota Department of Commerce found that "the Quality Assurance Coordinator A.D. had never read Minnesota Statute Chapter 80G and did not know what sales practices requirements and prohibitions were included in the law."

44.     The Minnesota Department of Commerce ordered Defendant to revise its quality assurance program and its criteria updated to include "all sales practices requirements and prohibitions included in Minn. Stat. § 80G.07 (2015)."

45.     Defendant was also ordered that it would not rely on any of its terms and conditions to a consumer for a bullion coin/product unless: (1) "The term or condition upon which [Defendant] seeks to rely was disclosed to the consumer in accordance with Minn. Stat. § 80G.07 subd. 1" or (2) "The consumer and [Defendant] have a signed written agreement for the purchase of bullion products disclosing such terms." (Ex. A at 7.)

46.     Additionally, Defendant consented that it would pay a $30,000 civil penalty and investigative costs.

47.     Defendant has failed to comply with the orders from the Minnesota Department of Commerce and continues to violate Minnesota law in its sales of bullion coins.

48.     Just as occurred in the enforcement action by the Minnesota Department of Commerce, here, Ballou and Williamson, both elderly people, purchased the coins after Defendant made misrepresentations regarding the material aspects of the coins sold, including their performance, efficacy, nature, investment value, central characteristics, liquidity, earnings potential, and profitability.  These were made in clear violation of Minn. Stat. § 80G.07.

9

## IV.  CLASS ALLEGATIONS

49.    This action is brought, and may be properly maintained, as a class action under Rule 23 of the Federal Rules of Civil Procedure. All requisite elements of Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) are satisfied; there is a well-defined community of interests in the litigation; the proposed Class and any subclasses are ascertainable; and a single class action is the superior manner to proceed when compared to the joinder of thousands, or tens of thousands, of individual cases challenging the same practices.

50.    Plaintiffs brings this action individually on behalf of themselves, and on behalf of the Class and Subclass(s) defined below, for which Plaintiffs are members, under Rule 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure seeking damages, restitution, injunctive and declaratory relief pursuant to the applicable laws set forth in the state law counts below.

51.    This action is brought on behalf of a national class (the "Class"), consisting of:

> All ascertainable persons in the United States who purchased one or more coins from either GovMint, or any of its affiliates, successors, predecessors or assigns from 2015 until the present.

52.    This action is also brought on behalf of elderly citizens (the "Elder Subclass"), consisting of:

> All Class members who were also age 62 or over at the time they made the purchase.

53.    The Class Period for the Class and Elder Subclass dates back to the longest applicable statute of limitations for any claims asserted on behalf of that Class or the Elder

Subclass from the date this action was commenced and continues through the present and to the date of judgment.

54.     Excluded from the Class are Defendant, its corporate parent, subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, and the legal representatives, assigns of any such excluded persons or entities, and the attorneys for Plaintiffs herein.  Also excluded from the Class are any judges presiding over these proceedings and their immediate family members.

55.     **Typicality**:  Plaintiffs' claims are typical of other Class members' claims because Plaintiffs, like every other Class member, was exposed to virtually identical conduct and was overcharged.  Further, Plaintiffs' claims are typical of those of the Elder Subclass since they were over the age of 62 at the time of the purchases.

56.     **Numerosity**:  The members of the Class are so numerous that joinder of all members is impracticable.  While the exact numbers of Class members are unknown to Plaintiffs at this time, Plaintiffs on information and belief believes that the numbers exceed 1,000.

57.     **Ascertainability**. The identities of individual Class members are readily ascertainable through appropriate discovery from records maintained by Defendant and their agents.

58.     **Superiority**:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable, the likelihood of individual Class members prosecuting separate claims is remote and individual members do not have a significant interest in individually controlling

the prosecution of separate actions. No difficulty will be encountered in this case's management to preclude maintenance as a class action.

59. **Common Questions of Law and Fact Predominate**: The questions of law and fact common to the Class predominate over questions affecting only individuals. Among the questions of law and fact common to the Class are:

- Whether Defendant employed a scheme or artifice to defraud Plaintiffs and the Class;

- Whether Defendant's widespread sales practices are wrongful and in violation of Minn. Stat. § 80G.07

- Whether Defendant's policies allowed them to induce class members to pay well above market value for the coins;

- Whether Plaintiffs and the Class members were overcharged;

- Whether Plaintiffs and the Class members were solicited to purchase coins or failed to disclose terms outlawed by the Minnesota Department of Commerce;

- Whether Defendant utilized other schemes to injure Plaintiffs and the Class in ways heretofore obscured;

- Whether Defendant unlawfully charged Plaintiffs and Class members' credit or debit cards;

- Whether Plaintiffs and the Class are entitled to rescission;

- Whether Defendant's billing practices were fraudulent;

- Whether Defendant's wrongfully obtained profits should be disgorged and if so, the proper calculation therefor;

- Whether the Class is entitled to restitution and if so, the proper calculation of such restitution;

- Whether Defendant has been unjustly enriched at the expense of Plaintiffs and the Class;

- Whether Defendant violated the Minnesota Prevention of Consumer Fraud Act and the Minnesota Uniform Deceptive Trade Practices Act;

- Whether Defendant violated the Deceptive Acts Perpetrated Against Senior Citizens or Disabled Persons Act;

- Whether Plaintiffs and the Class are entitled to injunctive relief;

- Whether Plaintiffs and the Class are entitled to damages, and if so, the proper calculation of said damages.

60. **Manageability**: The Class litigation will be manageable because all issues are identical, and individualized calculation of damages can be accomplished methodically by an expert via the use of data and information provided by Defendant and its agents.

61. **Adequacy**: Plaintiffs can fairly and adequately represent the Class's interests; Plaintiffs have no conflicts of interest with other Class members, and have retained counsel competent and experienced in class action and complex civil litigation.

## V.  CLAIMS FOR RELIEF

### COUNT I

**Violation of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68 *et seq.***

62.    Plaintiffs incorporate and realleges each and every allegation in the preceding paragraphs as though fully set forth herein.

63.    This Count is based on Defendant's deceptive and misleading conduct and common omissions of material fact.

64.    Minnesota consumer protection statutes are remedial in nature, and all broadly prohibit deceptive, unfair, and misleading practices directed at consumers in the course of business, including those alleged to have been conducted by Defendant.

65.    Plaintiffs and the Class are persons within the meaning of Minnesota's Consumer Fraud Act.

66.    The items for which Defendant charged Plaintiffs are goods, services, and/or merchandise within the meaning of Minnesota's Consumer Protection Statute.

67.    Defendant charged Plaintiffs directly for the goods, services, and merchandise at issue.

68.    Defendant marketed and sold coins to Plaintiffs and the Class in a deceptive and misleading manner.

69.    As described above, Defendant systematically and regularly engaged in selling coins, overpricing them, obfuscating and concealing their true value, and

convincing an unwitting public that the coins are valuable and worth what they are charging for them.

70.     Minn. Stat. § 80G.07 imposes a fixed duty of care that coin dealer and dealer representatives, including Defendant, are to use with consumers, like Plaintiffs.

71.     That statute requires that a dealer or dealer representative shall not misrepresent the material aspects of the coins sold, including their performance, efficacy, nature, investment value, central characteristics, liquidity, earnings potential, and profitability.  Minn. Stat. § 80G.07.

72.     Defendant violated the Minnesota Consumer Protection Statutes by, among other things, misrepresenting the quality of the coins, including their value and future value; allowing Plaintiffs and the Class to operate under an obvious mistaken belief about the value and utility of the coins; selling the coins to Plaintiffs and the Class members in a manner and at a price that relied upon a misapprehension and lack of understanding about the qualities, characteristics, uses, benefits of the coins which the coins lacked; advertising the sale of certain coins with the intent to sell other coins for more money; making omissions regarding the reasons for price of the coins; representing that the consumer stands to receive an economic benefit which is contingent on an external factor (the market) without disclosing the truth about the contingency or its likelihood to occur.

73.     Defendant never told Plaintiffs or Class members that it engaged in cramming and/or maintained internal incentive programs aimed at increasing its revenues by charging its customers for overpriced coins and convincing an unwitting public that the coins are valuable and worth what they are charging for them. The omission of such facts

was material, as reasonable consumers contemplating transactions with Defendant, either initially or on an ongoing basis, would have wanted to know about such practices prior to engaging in such transactions. Reasonable consumers, had they been made aware of such facts, would have acted differently, including but not limited to—if able—not purchasing the coins.

74.    Defendant had a duty to disclose material facts to Plaintiffs and members of the Class. The information concealed was in the exclusive possession of Defendant and not able to be obtained by Plaintiffs and Class members from other sources. Additionally, Defendant made partial statements about price in the form of sales representations and billing statements. Having spoken and provided partial information, Defendant had an affirmative duty to fully disclose all facts, including the existence of internal incentive programs aimed at overcharging Plaintiffs and the Class.

75.    Defendant's misrepresentations were directed at and affected a broad group of consumers including Plaintiffs and the Class.

76.    These practices were not isolated incidents but rather the result of widespread, systematic, pervasive, and persistent conduct and business policies adopted by Defendant, which were aimed at maximizing Defendant's revenue at the expense of its customers.

77.    Minnesota's State Consumer Protection Statute prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

78.     Under Minnesota's Consumer Protection Statute, an objective test is employed in determining whether a practice is likely to deceive a consumer acting reasonably. That is, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission of material fact at issue. Defendant acted with the intent that Plaintiffs and members of the Class rely on its concealment, suppression, or omission, in connection with the sale or advertisement of goods and services, and therefore engaged in unlawful practices in violation of Minnesota's Consumer Protection Statute.

79.     Defendant engaged in unfair and deceptive acts and practices that violated each of Minnesota's Consumer Protection Statutes, causing Plaintiffs and members of Class injury and financial loss. Additionally, the risk of future injury remains unless enjoined.

80.     Under Minn. Stat. § 8.31, subd. 3a, Plaintiffs and members of the Class are thus entitled to recover damages, costs and disbursements, including costs of investigation, and reasonable attorney's fees, and receive other relief as determined by the court.

## COUNT II

**Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43 et seq.**

81.     Plaintiffs incorporate and realleges each and every allegation in the preceding paragraphs as though fully set forth herein.

82.     Defendant, through its employees and agents, engaged in a pattern and practice of deceptive and misleading activity, and collection of monies by way of false pretenses. Defendant engaged in deceptive, unconscionable, and/or unfair business practices by, among other things: selling coins, overpricing them, obfuscating and

concealing their true value, and convincing an unwitting public that the coins are valuable and worth what they are charging for them.

83.     The amounts Defendant charged, collected, and deducted from bank accounts (or otherwise billed and collected) are material terms to Defendant's customers, including Plaintiffs and the Class.

84.     Defendants engaged in conduct likely to cause confusion and misunderstanding as to the value of goods sold, and the reasons for discounts from the actual or prospective value in violation of Minn. Stat. § 325D.44, subd. 1(11) and (13).

85.     Price is a material term to consumers. Deceptively overcharging consumers in a manner they are unlikely to detect within a short time period is a material misrepresentation or an omission of material fact to reasonable consumers in the Class.

86.     As in the proceedings brought by the Minnesota Department of Commerce, the misconduct described in this Complaint occurred in a regular and continuous manner and Class members were injured because Defendant maintained incentive programs for its employees and agents that provided financial incentives to engage in such conduct.

87.     It is very difficult to obtain an independent public assessment of a bullion coin's value. Therefore, Defendant knows that certain customers may not know that the value of the coins are not worth what Defendant is charging for them, immediately notice such discrepancies, and immediately seek corrections when appropriate. Defendant seeks to exploit and take advantage of that dynamic.

88.     As a result of Defendants deceptive conduct, Plaintiffs are entitled to injunctive relief, costs and attorney fees under Minn. Stat. § 325D.45.

## COUNT III

**Violation of the Deceptive Acts Perpetrated Against Senior Citizens or Disabled Persons Act ("SCDPA") §§ 325F.71 *et seq*. (Brought by the Elder Subclass Against Defendant)**

89.     Plaintiffs reallege and incorporate each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

90.     Count II is brought on behalf of members of the Elder Subclass.

91.     Under Minn. Stat. § 325F.71,m subd. 2(a), "In addition to any liability for a civil penalty" under Counts I and II, "a person who engages in any conduct prohibited by those statutes, and whose conduct is perpetrated against one or more senior citizens or disabled persons, is liable for an additional civil penalty not to exceed $10,000 for each violation, if one or more of the factors in paragraph (b) are present."

92.     Included in paragraph (b) is whether the Defendant knew that its conduct was directed at senior citizens, which Defendant did know.

93.     Under Minn. Stat. § 325F.71, subd. 4, Plaintiffs and other members of the Elder Subclass are entitled to recover damages, equitable relief as determined by the court, costs and disbursements, including costs of investigation, and reasonable attorney's fees.

## COUNT IV

### Unjust Enrichment

94.     Plaintiffs reallege and incorporate each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

95.     By taking advantage of Plaintiffs and the Class's unequal information and bargaining power, selling multiple coins to the same people, obfuscating the true nature of

the coins' value and the secondary market for such coins, and targeting vulnerable purchasers, Defendant has retained the moneys charged for such coins at rates that would not prevail in an arm's length and just marketplace.

96.     It would be inequitable and unjust for Defendant to retain the profits, benefits, interest, and other compensation obtained through their wrongful conduct which is in express violation of Minnesota law, including but not limited to Minn. Stat. 80G.07.

97.     As a result of this unjust enrichment, Plaintiffs and the Class seek restitution in an amount sufficient to compensate them for their losses. These losses include the amount Defendant was unjustly enriched by the excess amount(s) charged to Plaintiffs and the Class.

98.     Plaintiffs and the Class further seek an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

## COUNT V

### Injunctive Relief

99.     Plaintiffs reallege and incorporate each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

100.     As alleged herein, Defendant, through its employees and agents, engaged in a pattern and practice of deceptive and misleading activity, and collection of monies by way of false pretenses. Defendant engaged in deceptive, unconscionable, and/or unfair business practices by, among other things: selling coins, overpricing them, obfuscating and

concealing their true value, and convincing an unwitting public that the coins are valuable and worth what they are charging for them.

101.   Defendant's conduct as described above constitutes an unfair and deceptive trade practice under Minn. Stat. § 325D.44, Subd. 1, and it is unlawful under Minn. Stat.§§ 325F.67, and 325F.69.

102.   Defendant continues to engage in cramming and/or maintains internal incentive programs aimed at increasing its revenues by charging its customers with overpriced coins selling coins and convincing an unwitting public that the coins are valuable and worth what they are charging for them.

103.   Plaintiffs and members of the Class are thus entitled to equitable and injunctive relief, and to recover their costs, and reasonable attorney's fees pursuant to Minn. Stat. §§ 8.31, subd.3a and 325D.45.

## VI.  JURY TRIAL REQUESTED

104.   Plaintiffs, on behalf of themselves and the Class members, demand a jury trial in this action for all of the claims so triable.

## VII.  PRAYER FOR RELIEF

105.   Plaintiffs, on behalf of themselves and the Class members, pray for the following relief:

    a.  An order appointing Plaintiffs as Interim Class Representatives and appointing undersigned counsel as Interim Class Counsel;

    b.  Certify the proposed Class and Subclasses and appoint Plaintiffs and their legal counsel to represent the Class and Subclasses;

c.  Find in favor of Plaintiffs, the Class, and the Subclasses on all counts asserted herein

d.  Award damages, including compensatory, exemplary, and statutory to Plaintiffs, the Class, and the Subclass in an amount to be determined at trial;

e.  Grant restitution to Plaintiffs, the Class, and the Subclass and require Defendant to disgorge its ill-gotten gains;

f.  Award Plaintiffs, the Class, and the Subclasses reasonable attorneys' fees and the costs and disbursements of this suit incurred herein;

g.  Enjoin Defendant from future misrepresentations regarding the sale of bullion and commemorative coins;

h.  Award Plaintiffs, the Class, and the Subclass pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

i.  Order any such other and further relief the Court deems just and equitable.

Plaintiffs demand a trial by jury of all issues so triable.


Dated: March 12, 2021.                    Respectfully submitted,

**CHESTNUT CAMBRONNE PA**

By */s/ Bryan L. Bleichner*

Bryan L. Bleichner (#0326689)
Jeffrey D. Bores (#227699)
Christopher P. Renz (#0313415)
100 Washington Avenue South
Suite 1700
Minneapolis, MN  55401
Phone:  612-339-7300
bbleichner@chestnutcambronne.com
jbores@chestnutcambronne.com
crenz@chestnutcambronne.com

**STECKLER WAYNE COCHRAN PLLC**
Bruce W. Steckler
Texas Bar No. 00785039
Austin P. Smith
Texas Bar No. 24102506
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230
Phone: (972) 387-4040
Facsimile: (972) 387-4041
Bruce@sgc.law
Austin@sgc.law